## Catherine DeVoney, Defendant in Error, v. Modern Woodmen of America, Plaintiff in Error.

### Gen. No. 14,404.

1. FRATERNAL BENEFIT SOCIETIES—*when recovery upon certificate cannot be had.* If a contract of insurance excludes liability if a member "die by his own hand", no recovery can be had where the death of the member so results.

2. FRATERNAL BENEFIT SOCIETIES—*what not waiver of condition of certificate.* In this case the certificate sued upon contained a provision excluding liability in the event of the member's death "by his own hand"; *held,* that the action of a clerk of the society, after the self-inflicted injury but before death, in suggesting the payment of delinquent dues and in receiving such payment, did not operate to waive such condition or to estop the society from availing of such provision by way of defense, such condition being a vital and fundamental part of the contract.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. JUDSON F. GOING, Judge, presiding. Heard in this court at the March term, 1908. Reversed and judgment here. Opinion filed April 12, 1909.

TRUMAN PLANTZ and A. W. FULTON, for plaintiff in error.

RICHARD I. GAVIN, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

Toney Guy DeVoney on April 15, 1907, was a member of Camp 11482 of Modern Woodmen of America. He became such member on January 31, 1907. He held a benefit certificate of that date, which provided that on his death while a beneficial member of the society in good standing, his wife, Catherine De-Voney, should be entitled to a thousand dollars, provided the conditions of the certificate and by-laws of the society were complied with.

This benefit certificate, however, declared itself to be issued and accepted only upon certain express warranties, conditions and agreements. One of these,

found among the provisions of the fifth paragraph of the schedule, was this:

"If the member holding this certificate    *    *    * shall within three years after becoming a Beneficial member of this society, die by his own hand, whether sane or insane, or if his death shall occur in consequence    *    *    * of any violation or attempted violation of the laws of any State or territory or of the United States,    *    *    * then this certificate shall be null and void and of no effect, and all moneys which have been paid and all rights and benefits which may have accrued on account of this certificate, shall be absolutely forfeited and this certificate become null and void".

On April 15, 1907, three months and eight days after he became a member of the order, Toney G. DeVoney shot himself with intent to take his own life. He was taken to the hospital and died on May 8, 1907, from the effects of the self-inflicted wound.

On May 2, 1907, seventeen days after the shooting and six days before the death, Mrs. DeVoney, the beneficiary under the certificate, with a brother of Mr. DeVoney, called on E. L. Ashcraft, the clerk of Camp No. 11482, and the following conversation and action occurred:

Mrs. DeVoney told Mr. Ashcraft of the shooting. Mr. Ashcraft said it was really too bad that DeVoney should have done such a thing. John B. DeVoney asked how his brother's account stood on the books. Ashcraft looked and replied, "I think he is two months in arrears. I think you had better pay both of them and in case anything happens to your brother, you will be on the safe side of the policy". John B. DeVoney then paid the two months' assessments, each for sixty cents, one which had become due April 10, 1907, and one for the current month of May, 1907. He took the two receipts, one dated April 10th and one dated May 2nd, each signed by E. L. Ashcraft, Clerk of Camp No. 11482, and handed them to his sister-in-law.

After the death of Toney DeVoney sufficient proofs of death were made, and the amount of the certificate demanded. Payment, however, was refused. The assessments paid on DeVoney's account after the shooting and before his death were tendered back to John B. DeVoney by the defendant before the present suit was brought. This suit was begun in the Municipal Court of Chicago November 11, 1907, and judgment for the plaintiff in the sum of one thousand dollars was rendered by that court sitting without a jury, on January 24, 1908. To reverse this judgment a writ of error was sued out of this court February 24, 1908.

The plaintiff (defendant in error) admits that because of the clause of the certificate above quoted, she would have been unentitled to recover on said certificate except for the payments of the assessments on May 2, 1907. She contends that the consent to, and invitation of, these payments on the part of the clerk of the Camp, and their acceptance by the defendant order, with full knowledge of the previous shooting and the suicidal intent of it, constituted "a waiver of the act of the deceased which produced the death" and "estopped the defendant from setting up the act of shooting as a matter of defense".

On this issue alone she concedes her case rests.

We cannot agree with her contention or with the decision of the court below.

The difference is a fundamental one. The plaintiff claims that because we speak of suicide as having been committed when the conscious affirmative act was executed with suicidal intent, and not when the death of the suicide occurred, we must say that the condition or situation which avoided the policy or certificate came into existence on April 15th and was waived by a payment and reinstatement of the insured on May 2nd. But the conclusion is a *non-sequitur*.

The provision of the certificate does not even use the term "suicide". The words are "if he die by

his own hand * * * this certificate shall be null
and void and of no effect''. If it would not be ac-
curate to say that the deceased ''committed suicide''
on May 8, 1907, it certainly would not be more ac-
curate to say that he ''died by his own hand'' on
April 15, 1907. The fact is that he died on May 8,
1907, and that as he died ''by his own hand'', al-
though he inflicted the wound on himself some weeks
before, the certificate did not cover the death. It is
not a question of forfeiture or reinstatement; it is
a question of what the contract includes. It does not
include a death self-inflicted, and therefore the plaint-
iff cannot recover.

Despite the criticism of plaintiff, we think the de-
fendant is right in saying that the question really is—
Did the payment of the assessments on May 2, 1907,
change the contract?

But in whatever form the issue is stated, it will re-
main in essence the same, namely—Did the language
and act of the clerk of the camp on May 2, 1907, give
to the plaintiff a right to recover which she otherwise
would not have had? We do not think they did. In
the first place, we do not think that any such waiver
or estoppel could be made by the clerk. Of course acts
and language of this sort might, by the subsequent ac-
tion or non-action of the order itself, through its au-
thorized representative governing body, or otherwise,
be ratified, and become effective, but there was no
such action here, nor time for such action; and the
question suggested is simply whether the clerk of the
camp could, by suggesting the payment and receiving
it, waive for the order a condition, or estop the order
from making a defense on a matter which was a vital
and fundamental part of the contract, and this in the
face of a by-law agreed to by the member, that

''No officer of this Society, except as provided in
Section 107 hereof, nor any local Camp officer, is au-
thorized or permitted to waive any of the provisions
of the By-laws of this Society which relate to the con-

tract between the member and the Society, whether the same be now in force, or hereafter enacted''.

But our view of this matter, although sufficient to dispose of the case, is not necessary to its decision, for we entertain no doubt that that decision should be the same, even though the act and language of the clerk should be held in the fullest sense the act and language of the order.

On May 2, 1907, DeVoney had not ''died by his own hand''. Nor could it be certainly foretold that he would. He was a member of the order. He was subject to its assessments. If he died from some other intervening or subsequent cause, and not from the effects of the gunshot wound he had inflicted on himself and for which he was under treatment, his beneficiary, in case all assessments were paid, would be entitled, under his certificate, to a thousand dollars.

Irrespective of his authority or want of it, what advice would have been more judicious and honest for the clerk to give than to pay the arrears of $1.20 and ''be on the safe side''? Or what course wiser than the one that the beneficiary and her brother-in-law took in paying it? Unfortunately for her, the wounded man did not recover from the wound, nor die from another cause, and consequently his certificate was of no value as a life insurance after his death on May 8th.

But unfortunate as it is, so far as she is concerned, we cannot strain the law in her favor nor take from the other members of the Society a fund which they did not contract to pay.

There is no dispute here as to the facts. It is our duty to give the judgment which the court below should have given. The judgment of the Municipal Court of Chicago is accordingly reversed and judgment of ''*nil capiat*'' entered here for the defendant and for its costs in the court below and in this court.

*Reversed and judgment here.*